IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

CRG NETWORK
P.O. Box 371086
Milwaukee, WI 53237

-vs-                                                                            Case No. 14-CV-

THOMAS BARLAND, HAROLD FROELICH, MICHAEL BRENNAN,
ELSA LEMELAS, GERALD C. NICHOL, AND TIMOTHY VOCKE,
each in their official capacity as Board Members of the
WISCONSIN GOVERNMENT ACCOUNTABILITY BOARD
212 East Washington Avenue, Third Floor
Madison, Wisconsin 53703,
                                    Defendants.

---

       The plaintiff, CRG Network, alleges as follows:

       1.     CRG Network is an organization whose mission is to help citizens elect fiscally conservative candidates, assert property rights, and remove corrupt and/or fiscally irresponsible politicians from office.  CRG Network is a committee as that term is defined in Wis. Stat. §11.01(4) and is subject to the filing requirement of Wis. Stat. §11.05.  CRG Network's address is P.O. Box 371086, Milwaukee, WI 53237.

       2.     CRG has historically made a number of donations to candidates for state office in Wisconsin.  CRG Network believes that Dan Knodl, Robyn Vos, John Nygren and Dale Kooyenga are excellent candidates for the Wisconsin Assembly.  They share the same fundamental beliefs as CRG Network with respect to fiscal conservatism, limited government, property rights, individual liberty and clean and ethical government. In 2014, CRG Network sent $250 campaign donations to each of Dan Knodl, Robyn Vos, John Nygren and Dale Kooyenga for their campaigns for State Assembly.  Mr. Knodl accepted the donation.  Messrs. Vos, Nygren and Kooyenga, however, each returned the donation, in whole or in part, to CRG

Network because each had reached the $7,763 limit on donations from committees like CRG Network as set forth in Wis. Stat. §11.26(9). Messrs. Vos and Nygren returned the donation in full. Mr. Kooyenga returned $86 of the $250 donation. CRG Network desires to associate with Messrs. Vos, Nygren and Kooyenga by giving each of them a $250 donation for their campaigns but its First Amendment associational and speech rights are being denied by Wis. Stat. §11.26(9).

3. The defendants, Thomas Barland, Harold Froelich, Michael Brennan, Elsa Lamelas, Gerald C. Nichol, and Timothy Vocke, are the board members of the Wisconsin Government Accountability Board, a governmental agency under Wis. Stat. §5.05 and have the responsibility of enforcing campaign finance laws in Wisconsin, including enforcing Wis. Stat. §11.26. Each of the defendants is sued in his or her official capacity.

## JURISDICTION AND VENUE

4. This case is brought under 28 U.S.C. § 2201 and 42 U.S.C. §§ 1983 and 1988.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action arises under the First Amendment to the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## NATURE OF ACTION

7. This is an action under 42 U.S.C §1983 because CRG Network has been denied its federal rights (its First Amendment rights to free speech and free association) by the defendants who are acting under color of law and is an action for a Declaratory Judgment Act under 28 U.S.C. §§ 2201 and 2202.

8. CRG Network challenges the limits of Wis. Stat. §11.26(9) which prevent Messrs. Vos, Nygren and Kooyenga from receiving more than $7,763 from all committees subject to the

2

filing requirement under Wis. Stat. §11.05 (hereinafter "committee" or "committees") (other than political party committees) that seek to donate to their campaigns for the Wisconsin State Assembly and from receiving more than $11,213 from all committees including political party committees.

9. Wis. Stat. §11.26(9) limits political speech and, thus, strikes at the heart of the First Amendment freedoms of association and speech. As the U.S. Supreme Court noted in *Citizens United v. FEC*, 558 U.S. 310, 329, (2010), such speech is central to the First Amendment's meaning and purpose. And as pointed out in *McCutcheon v. FEC* 134 S. Ct. 1434 (2014), "[T]here is no right more basic in our democracy than the right to participate in electing our political leaders. Citizens can exercise that right in a variety of ways: They can run for office themselves, vote, urge others to vote for a particular candidate, volunteer to work on a campaign, and contribute to a candidate's campaign. This case is about the last of those options." 134 S. Ct. at 1440-1441 (emphasis added)

10. This case, like *McCutcheon,* is about the last of those options.

11. The Supreme Court has held that "preventing corruption or the appearance of corruption [is] the only legitimate and compelling government interest[] thus far identified for restricting campaign finances." *FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496-97 (1985). That point was re-emphasized in *McCutcheon* where the Supreme Court said that campaign finance restrictions that pursue objectives other than quid pro quo corruption, "impermissibly inject the Government into the debate over who should govern. And those who govern should be the *last* people to help decide who *should* govern." 134 S. Ct. at 1441-1442 (citation omitted, emphasis in original)

12. The Supreme Court has rejected any purported government interest alleged to support limitations on campaign contributions beyond actual financial quid pro quo corruption, such as preventing candidate influence, access or gratitude, or leveling the playing field. *See, Citizens United*, 558 U.S. at 359. In *McCutcheon,* the Supreme Court expanded its explanation pointing out that the government cannot regulate campaign contributions simply to limit the amount of money in politics, or to restrict the political participation of some in order to enhance the political participation of others. 134 S. Ct. at 1441. Thus, for Wisconsin's limitations in Wis. Stat. §11.26(9) to be upheld they must be scrutinized to determine if they prevent actual quid pro quo corruption.

13. The limitations in Wis. Stat. §11.26(9) were previously considered by the Wisconsin Supreme Court in *Gard v. Wisconsin State Elections Bd.*, 156 Wis. 2d 28, 456 N.W.2d 809 (1990). *Gard* upheld the limitations, but *Gard* was decided before the U.S. Supreme Court's decisions in *Citizens United* and *McCutcheon*. In *Gard* the Wisconsin Supreme Court concluded "that sec. 11.26(9)(a), Stats., is necessary as part of Wisconsin's Campaign Financing Law, in order to prevent the domination of any individual candidate's campaign by narrow special interest contributions." *Gard*, 156 Wis. 2d at 65. That rationale cannot survive post *Citizens United* and *McCutcheon*.

14. The limitations contained in Wis. Stat. §11.26(9) do not address actual quid pro quo corruption. For example, under these limitations Messrs. Vos, Nygren and Kooyenga can accept fifteen $500 contributions from different committees and a sixteenth contribution of $263 (without any fear of quid pro quo corruption) but could not accept a seventeenth contribution of $100, or $10, or $1 from some other committee (including CRG Network's donation of $250). How can a $500 donation from Committee A be non-corruptive but a $250 donation from CRG

Network be corruptive? To ask the question is to answer it. It cannot. How can a $164 donation to Mr. Kooyenga be non-corruptive but a $250 donation be corruptive. Again, it cannot. On the other side, CRG Network can make a $250 contribution (or even a $500 contribution) to Mr. Knodl (without any fear of quid pro quo corruption) but a $250 donation to Messrs. Vos, Nygren and Kooyenga is prohibited. Again, that makes no sense from the standpoint of preventing quid pro quo corruption. If CRG Network's donation of $250 or $500 to Candidate A is non-corruptive then its $250 donation to Messrs. Vos, Nygren and Kooyenga must also be non-corruptive.

15. The limitations in Wis. Stat. §11.26(9) prevent CRG Network from associating with candidates of its choice and does so even though it is not designed to prevent quid pro quo corruption because similar contributions are deemed perfectly appropriate and statutorily permitted without any risk of such corruption.

## CAUSE OF ACTION

16. CRG Network is a "committee" as defined in Wis. Stat. §11.01(4) and has a filing obligation under Wis. Stat. §11.05. CRG Network makes financial donations to candidates for elective office in the State of Wisconsin as a way of advancing CRG Network's interests in public policy issues. CRG Network's financial contributions are part of CRG Network's exercise of its First Amendment rights of speech and association.

17. CRG Network donated $250 to the campaign of Messrs. Vos, Nygren and Kooyenga, each a candidate for State Assembly, but those donations were returned, in whole or in part, because each of those candidates had already received the limit of donations from political committees set by Wis. Stat. §11.26(9).

5

18. Contribution limits implicate First Amendment concerns by limiting the rights of free speech and association. As noted in *Citizens United*, "political speech must prevail against laws that would suppress it, whether by design or inadvertence." 558 U.S. at 340.

19. Pursuant to Wis. Stat. §11.26(2), the limitation on a donation by a committee to a candidate for governor, lieutenant governor, secretary of state, state treasurer, attorney general, state superintendent, or justice are as shown on Exhibit A attached hereto in the column entitled "Single Committee Contribution Limit." The limitation on a donation by a committee to a candidate for the state assembly is $500.

20. The State of Wisconsin has determined that contributions in the amounts set forth on Exhibit A including contributions by committees of $500 to candidates for Wisconsin State Assembly do not give rise to an unacceptable risk of corruption and are permissible.

21. The limits in Wis. Stat. §11.26(9), however, prevent candidates from receiving and committees from giving donations in the amounts set forth in Exhibit A, if the candidate has already reached the limit set forth in Wis. Stat. §11.26(9), despite the fact that a committee may wish to associate with such candidates at a level the legislature has identified as non-corrupting in setting other contribution limits.

22. Prohibiting a candidate from receiving and a committee from making a contribution in an amount which has been determined to be non-corrupting, is an unconstitutional limitation of the committee's First Amendment rights.

23. Nor can the restrictions in Wis. Stat. §11.26(9) be justified to prevent an evasion of the individual contribution limits under Wis. Stat. §11.26(1). For example, they cannot be justified as a way to prevent a person from making the maximum individual donation possible

6

under Wis. Stat. §11.26(1), and then creating numerous committees and having each of them also give the maximum donation possible under §11.26(2).

24. First, any such circumvention scheme would be impractical. Each such committee would need to be registered under Wis. Stat. §11.05(3), have a treasurer and a campaign depository account, and file disclosure reports twice per year under Wis. Stat. §11.06. Further, each such committee would have to pay a $100 filing fee under Wis. Stat. §11.055. Then, even after the expense and effort of setting up such a committee, the committee would still be limited to only making a donation of $500 to a candidate for the Wisconsin State Assembly. Thus, such an evasion of the individual limit would be so expensive and difficult as to be impractical.

25. Second, and more importantly, such an argument was specifically addressed and rejected in *McCutcheon*. The Supreme Court noted that an antiproliferation rule exists, prohibiting donors from creating or controlling multiple affiliated political committees. *See* 2 U. S. C. §441a(a)(5). The rule provides that for the designated purposes, "all contributions made by political committees established or financed or maintained or controlled by any corporation, labor organization, or any other person … shall be considered to have been made by a single political committee." 134 S. Ct. 1446-1447

26. As noted by the Supreme Court, "the rule eliminates a donor's ability to create and use his own political committees to direct funds in excess of the individual base limits. 134 S. Ct. at 1447

27. Although there may be some dispute about precisely what standard is to be applied to the scope of review in a First Amendment challenge to laws restricting campaign

7

contributions, - either "strict scrutiny" or the "closely drawn" test in *Buckley* – the Supreme Court noted in *McCutcheon* that in applying either standard:

> '[W]e must assess the fit between the stated governmental objective and the means selected to achieve that objective. See, *e.g., National Conservative Political Action Comm.*, *supra,* at 496–501; *Randall* v. *Sorrell*, 548 U. S. 230, 253–262 (2006) (opinion of BREYER, J.). Or to put it another way, if a law that restricts political speech does not "avoid unnecessary abridgement" of First Amendment rights, *Buckley*, 424 U. S., at 25, it cannot survive "rigorous" review."

134 S. Ct. at 1445-1446

28. In *McCutcheon*, the Court found "a substantial mismatch between the Government's stated objective [to prevent circumvention of the individual limits] and the means selected to achieve it," and that, as a result, "the aggregate limits fail even under the "closely drawn" test." 134 S. Ct. at 1446

29. The same is true here. Even though Wisconsin does not currently have an antiproliferation rule similar to the federal rule described in *McCutcheon*, there is nothing that prevents it from adopting one. If it did so, it would have a much more narrowly drawn rule than the dragnet that now exists in Wis. Stat. §11.26(9) which on its face prohibits contributions which are admittedly non-corruptive. Moreover, in *McCutcheon*, the Supreme Court described other federal rules that prevented circumvention of the individual donation limits including an anti-earmarking rule and limits on donations to PACs. Thus, the State of Wisconsin has access to legitimate tools to prevent circumvention of the individual limits, rather than the heavy handed and unconstitutional limitations in Wis. Stat. §11.26(9) which prevent contributions that the state, itself, acknowledges have no corruptive effect.

30 The restrictions in Wis. Stat. §11.26(9) unnecessarily chill speech and infringe upon associational rights through a means that is not appropriately tailored. Thus, that limit is

unconstitutionally overbroad. For that reason, CRG Network's constitutional rights are being violated.

31. The defendants, acting under the color of state law, are depriving CRG Network of its First Amendment rights of speech and association.

## PRAYER FOR RELIEF

WHEREFORE, CRG Network requests the following relief:

A. A declaration that the limits on contributions in Wis. Stat. §11.26(9) are unconstitutional on their face.

B. An injunction barring enforcement of the contribution limits in Wis. Stat. §11.26(9).

C. Costs and attorneys' fees, including attorneys' fees under 42 U.S.C . §1988.

D. Such equitable or other relief as this Court may consider just and appropriate.

Respectfully submitted this 20th day of June, 2014.

    Respectfully submitted,
    WISCONSIN INSTITUTE FOR LAW & LIBERTY, Inc.
    Attorneys for Plaintiff

    /s/ Richard M. Esenberg
    Richard M. Esenberg, WI Bar No. 1005622
    414-727-6367; rick@will-law.org
    Thomas C. Kamenick, WI Bar No. 1063682
    414-727-6368; tom@will-law.org
    Brian McGrath, WI Bar No. 1016840
    414-727-7412; brian@will-law.org
    MAILING ADDRESS:
    1139 East Knapp Street
    Milwaukee, WI  53202-2828
    414-727-9455
    FAX:  414-727-6485